Dear Mr. Decuir:
This office is in receipt of your request for an opinion of the Attorney General in regard to the veto power of the Mayor of Jeanerette, a legislatively chartered community. You ask the following:
 Does the mayor of Jeanerette have the power to veto personnel decisions of the Board of Aldermen (specifically when they meet in their capacity as the Jeanerette Civil Service appointing authority)? How is the term "appointing authority" for the city of Jeanerette used in the Civil Service Act and Rules?
There is no question that pursuant to the Charter in Sec. 1-109 the mayor has the "right to veto any law, bylaw, resolution or ordinance of the board". Based upon this provision of the Charter the Mayor is given broad veto power and is not limited to taking action only on ordinances. Based upon the jurisprudence in Eubanks v. City of Opelousas, 590 So.2d 740, (La.App 1991), quoting from James v. Rapides Parish Police Jury, 236 La. 493,108 So.2d 100 (1959) this office has observed that all acts that are done by a municipal corporation in its ministerial capacity, and for a temporary purpose may be in the form of a resolution, but matters upon which the municipal corporation desires to legislate must be in the form of ordinances.
However, the pertinent question is if this veto power is applicable to a vote of the aldermen in their capacity as members of the appointing authority of the Jeanerette Civil Service.
In Atty. Gen. Op. No. 93-53 this office found broad veto powers of the mayor in the City of Plaquemine, a legislatively chartered community. Pursuant to the charter provisions, the Mayor was authorized to approve "all the laws, ordinances, resolutions, rules or regulations passed by the board". It was reasoned that the Mayor had authority to veto a resolution of the Board appointing an officer or hiring an employee. However, the establishment of a Personnel Board consisting of the Mayor and Board of Selectmen was noted, and the observation made that the ordinance creating the Personnel Board provided that it "shall hire all employees of the city". This office stated the ordinance establishing the board was not objectionable on the ground that "it curtails the Mayor's veto Power", pointing out that the Mayor at the time of the adoption of the ordinance establishing the Personnel Board had the power then to veto this ordinance but did not do so or had his veto overridden.
We must conclude the establishment of the civil service system under Act 274 of 1981 with respect to the municipal employees of Jeanerette is comparable to the Personnel Board of the City of Plaquemine, and like the Personnel Board in Plaquemine, curtails the mayor's veto power in regard to actions of the appointing authority. It is a separate entity from the mayor and board acting in their capacity as the governing authority of the municipality, and the power of the Mayor as a member of the civil service appointing authority is distinguishable from that as executive officer of the municipality. He becomes one of the voting members of the appointing authority rather than the executive officer of the municipality who under the charter can only vote in case of a tie.
We find support for this conclusion insofar as the Act provides that it shall be the duty "of the appointing authority to discharge or suspend from the service or reprimand any employee whom it deems guilty of violating" any of the civil service provisions. The "appointing authority" is treated as a single entity and only "the appointing authority" is given the power to take corrective or disciplinary action.
We think this is also pertinent to your question relative to how is the term "appointing authority" used in the Civil Service Act and Rules.
Under Act 414 of 1966 which originally enacted a system of civil service for the municipal employees of the town of Jeanerette, "appointing authority" was defined to mean "the Mayor and Board of Alderman of the town of Jeanerette, La." However, in act 274 of 1981, which repealed Act 414, changes were made such as the composition, appointment and terms of the Civil Service Board, and the definition of "appointing authority", defining it simply as "any official or employee of the city of Jeanerette with the responsibility and authority for hiring municipal employees".
We feel by reading Act 274 of 1981 as a whole, and recognizing the Civil Service Board's power to make rules and regulations, it was left to the Board to specifically designate who the "appointing authority" would be. Accordingly, the Municipal Employees Civil Service Rule I, Definitions, provides:
 "Appointing Authority" means the Mayor and Board of Aldermen of the Town of Jeanerette, Louisiana.
We feel that the conclusion that the Appointing Authority is a separate entity from the Mayor and Board is demonstrated by the difference of the definition in the two acts, and the fact that in various parts of the Act of 1981 reference is made to the "mayor, aldermen, and appointing authority" such as in prohibiting discrimination or with respect to appeals. This phrasing treats the appointing authority as a separate unit from the mayor and aldermen, and only by the Civil Service Rule do the mayor and aldermen fill this position because the legislature in the Act did not define the appointing authority as the mayor and board of aldermen as did the earlier act.
Consequently, we must conclude the mayor is one voting member of the appointing authority, and does not have veto power over the votes of the other members. His veto power over the action of the aldermen is relative to their action as the legislative authority of the municipality, but not when he and they sit jointly as appointing authority of the civil service system.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: _____________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR